and justice Joseph E. Burkett. The case is number 218-0794. People of the state of Illinois, Plaintiff Appellee v. Maurice Jones, defendant appellant. Arguing for the appellant, Douglas H. Johnson. Arguing for the appellee, Richard S. Lundin. Good morning, counsel, and sorry to keep everyone waiting. Mr. Johnson, if you are ready to proceed, you may do so. Thank you, Justice. May it please the court, counsel, my name is Doug Johnson and I represent the petitioner, Maurice Jones. Mr. Jones pled guilty to armed violence, received a 25-year sentence. He did not attempt to withdraw it at the trial court level. He did not file a direct appeal and then a timely post was filed. This court, I'm sorry, the trial court dismissed that petition at the first stage and this court reversed that decision, specifically saying that petitioner's assertion that his counsel that assisted him in entering his plea was ineffective was not fanciful. The allegations regarding that were not fanciful. Therefore, the case was remanded and the matter proceeded to the second stage where it was dismissed at the second stage, which brings us here today. The court's standard of review is this de novo and just going to summarize our allegations in the post-conviction, we alleged and supported it with the petitioner's affidavit that he received ineffective assistance of counsel because he invoked his right to counsel when he asked for a lawyer repeatedly when he was taken into custody. He was taken into custody in the afternoon about three o'clock and the statement, his written statement came out a little over 24 hours later and we alleged that he repeatedly asked for an attorney and those requests were denied. He would continue to be questioned without counsel present. Also in the slightly related issue or a related issue, we alleged that he had an attorney that his family had retained and sent to the police station, a Mr. Goldman, and Mr. Goldman arrived and sought to speak to Mr. Jones, but Mr. Jones was never told there was an attorney there. And we also alleged among other things about he was tired during the interrogation and he, his clothing was removed early on. Most importantly, in the petition, we set forth that Mr. Jones's girlfriend, Jennifer Baines, who he was alleged to have planned a robbery with, was also in custody. That's not disputed. She was the mother of his child and we alleged that the police officers told Mr. Jones that if he were to talk or to make a statement, Ms. Baines would be released. We also alleged that after he was charged, Mr. Jones told his second attorney that he had, Mr. Carrullo, who represented him at the plea, that he told all of this to that attorney, but no motion to suppress was filed. I don't believe those allegations are directly rebutted by the record. They certainly, I believe, would be rebutted at an evidentiary hearing, and that's what we're asking for, of course. And I believe this case, based on that, this case should proceed. Under Strickland's, certainly a counsel has, petitioner has a right to effective assistance of counsel. And as this court stated in its prior opinion, really the only evidence against Mr. Jones was his statement. Therefore, we believe the second prong of Strickland is met, because if a motion to suppress had been filed, and if it was granted, then it seems very reasonable to conclude that Mr. Jones would have proceeded to trial, if indeed there was a trial, because of the lack of evidence beyond his statement. When this case came to the trial court the second time, and it was dismissed, the trial court didn't say, and they did issue a written order, or the court did issue a written order, but not a lot of it said about this particular argument. The trial court didn't really directly address these allegations, but wrote that the claims of attorney ineffectiveness are conclusory and lack specificity, and that defendant's claims are uncorroborated. The trial court did directly address other allegations, and it did direct the, kind of focused, as the state did a lot and has, on the point of the attorney coming to the station. We believe that is a unique factor in this case, certainly not completely unique, but something that sets it a little bit apart from a lot of cases. But there, as this court pointed out in its footnote in the prior case, if Mr. Jones asked for an attorney, we don't need to look further to see if an attorney showed up, that's a little bit different issue. If he asked for an attorney, and they continued to question him, then he has invoked the protections in the Fifth Amendment. Now, as to whether or not these allegations are corroborated or not, I don't think it's disputed that an attorney came to the station, that Mr. Goldman came, it's just that the state says he was late, that after he got there, just after Mr. Jones had made the statement. We believe that's an issue of when he got there, could be resolved in an evidentiary hearing. As to our assertion that Mr. Jones was promised that Jennifer Baines would be released if she made a statement, I believe that's corroborated by the fact that she is a co-defendant, she was there at the station, she is the mother of his daughters, and then something happened, and the police officers took, as the reports reflect, the police officers took him to her after, they say, he made a statement. So, it appears he must have expressed interest in seeing her. I'm sure the state will argue, well, they just happened to take him over there, there was no reason not to, but I think one could infer from that that her name came up, and while they didn't release her, they did do the minimum and allowed him to see her. What exactly, or why that was done, what exactly happened, I believe could also be resolved in an evidentiary hearing. The state responds that either to deny this argument or grant a limited evidentiary hearing on it, and the question of whether the attorney came and when he got there. But the state argues that we should have attached the affidavit of Mr. Goldman, and we could have, and we didn't, and this is what the, this court has already decided, that under Collins, we were not required to do so. I would also add that the record is not clear, or certainly isn't clear, as to whether or not that was attempted, and I won't go outside the record, but I think the realities of how this works is that people often do not want to get involved. The state claims there's no documentation the attorney was present, but as I've said, there is. I don't believe that's disputed. It's in the report. The state says with regard to the Jennifer Baines argument that there was leverage there, that is, that she was allowed, she, Jones was told, well, Ms. Baines will be released. They say, well, under CASNY, police officers are allowed to lie to suspects, and we certainly understand that. Absolutely. But what, the line is crossed when leniency or some type of specific benefit is promised, and here, I believe that telling Mr. Jones that Ms. Baines will be released is the type of specific benefit that can't be promised, which makes his statement involuntary. There are also points with regard to, the state argues that we didn't attach a police report because it does not dispute a police report claiming it is 100% false in every way, just that certain aspects of that report were false. The key things being that Mr. Jones asked for an attorney, but we didn't certainly try to hide a police report and not deny it, and we invite the court to review what the state has submitted. And for those reasons alone, oh, and lastly, the fact that Goldman is in the record, that Goldman did file an appearance in the case later, I think also suggesting that he did indeed appear, he filed an appearance that is in the common law record. So, for those reasons, we think that this case should be remanded. For those and the other reasons in the written brief, it should be remanded for an evidentiary hearing. All right. Have you completed this part of your argument, sir? Yes, Your Honor. Thank you. All right. Justice Jorgensen, do you have any questions that you wish to ask? Did anyone make an attempt to get an affidavit from Goldman? Yes, our office did. I didn't know I could go into that outside the record, but we did attempt. And we believe with subpoena power at an evidentiary hearing, that would give us more leverage to bring him in. But you chose not to put that into his petition or attach it to his petition? That is correct. All right. That was really my question. Justice Hutchins, could I have nothing else? Thank you very much. Justice Burkett, do you have any questions? Yes, I have quite a few. Thank you. Thank you. Mr. Johnson, your argument is basically you go back to the first decision in Jones 1, where we found that the petition stated the gist of a constitutional claim. Here, documents, the pleadings, must make a substantial showing of a constitutional violation. Would you agree there's a difference between the gist of a constitutional claim and making a substantial showing? Absolutely. And are you familiar with the principle that a voluntary guilty plea that waives all errors and irregularities in a proceeding, including constitutional errors? Would you agree? I would agree, but not in the ineffective assistance of counsel like that we've argued here. Well, in order to be entitled to any hearings, don't you have to make a showing in the pleadings that there's a reasonable possibility of success on the motion, that the motion would be the outcome of the trial would have been different had the evidence been suppressed? Yes, Your Honor. And as Justice Jorgenson pointed out, there's no explanation in the pleadings or the attachments as to why you did not attach an affidavit on Mr. Goldman, correct? There is not. And would you also agree that the decision as to whether or not to offer or to file the motion suppressed is a matter of trial strategy? I think under the circumstances of this case, where you have a written statement that is basically the only evidence against the defendant, you have a situation where the mother of the defendant's child is also in custody, you have something that lasted for 24 plus hours, where a man was left, where the report says he was questioned for two hours, then just stopped, nothing about why it for eight hours after not saying anything, and then magically makes a statement the following day. And also the fact that it is understood that an attorney came to the station to talk to him. I think under all those, when one considers all of that in relation to also pleading and getting 25 years, there was no strategy, no reasonable strategy that one can conclude occurred here to not file a motion to suppress and at least give it a try. Let me ask you this about that comment in Jones 1. I've had the chance to read the entire record. The defendant was arrested in a van or in a vehicle with bangs, and she immediately told the police about her involvement, correct? She told, she misrepresented some things, a few things, but she did talk. Later corrected that. The defendant was also, his description matched the description of the robber that was given by witnesses, correct? And that was recorded on the video from the bowling alley and the hotel, correct? Yeah. Okay. And the police had already, by the time your client pled guilty, they had gotten an agreement from Miller to testify against the defendant if the case went to trial, correct? Uh, I am unsure if Miller had agreed to testify against, uh, I am unsure whether or not he had agreed to testify against the defendant at that point, but it's a record, uh, it's in the transcript of Baines' hearing. Okay. So that statement that you made that they had no other evidence, that's not true. They did have other evidence, right? Well, I don't know that, no, I would not agree with that. I think there was also a dispute between, at Baines' hearing, there was a dispute between whether or not Baines would have cooperated, uh, or would not have. The state and the defense were arguing about that, but I don't know if there was representations at the Baines hearing, uh, made, uh, that we can just assume that Miller would have testified against Jones. One of the allegations in the petition and in the defendant's affidavit is that he didn't have enough time to consider the state's office, correct? Uh, yes. Well, the record shows that on June 12th, the state made clear that an offer had been tendered, additional discovery was supplied, and the defense was requesting additional time to review the discovery with his client and to decide whether or not to take the offer. And then, not until August 21st, does the defendant plead guilty, correct? Uh, the second part is correct. That's when he pleads guilty. The attempted murder charge, which, uh, ups the ante, so to speak, was added late, and we also have alleged that Mr. Jones had very little time to consult with his attorney. Uh, so whether, how long he had does not mean that he got proper direction throughout that time. Would you agree that the transcript of the plea hearing, the defendant says, yes, I did all of the discovery with my attorney, and yes, we did discuss the offer? Doesn't that refute your claim? Uh, to some degree, I suppose it does, but it also shows the reality of this, uh, as we have stated, and as he has stated in his affidavit, he was, uh, in that forum, hadn't talked, told, uh, felt that he had no choice. And so, therefore, yes, it's on the transcript, but I don't know. I think the reality is that it's always on the transcript, and it doesn't mean that he was fully informed when he did that, especially with the complexities that were added with the attempt to murder charge. The offer was conveyed on June 12th. He pled guilty August 21st. He said, on the record, I went over the discovery with my client, with my attorney. I also reviewed the offer with my attorney, and we discussed the common abilities. All that's in the record, correct? Uh, I would agree that is in the record. I, I just respectfully disagree with that, with us being able to infer from that, that Mr. Jones was fully and completely, uh, informed and completely and, uh, fully understood. Would you agree with this? Let me just, uh, review this with you. Would you agree that it's unnecessary to determine the legality of the petitioner's original detention or the voluntary nature of his confession since a voluntary plea of guilty waives all non-jurisdictional errors? Would you agree with that? I'm, I'm sorry. I, I, my, I'm, I think I broke up a little bit on that. Um, could you read that again? Waives all errors. I didn't hear that. You agree? I, I, I don't, didn't hear the first part of the question. I don't, don't believe his ineffective assistance to counsel. The law supports a waiver of his ineffective assistance to counsel claim here. Are you familiar with people versus belts? Uh, I does not ring a bell. That's all I have. Justice. Thank you, Mr. Johnson. How do we know that, uh, the attorney arrived at the police station? Uh, Mr. Uh, well, we've alleged it and it does not rebut the record. And then as I stated, it is, he did file an appearance in the case in the common law record in this case. Okay. So we are taking those actions as an inference that he was there at the station and a police report. There is a police report that reflects that Mr. Goldman arrived as I stated, the state, uh, state, the state says he was too late. Right. Did that, is that the police report that was attached or is that the police report that the state says should have been attached? I think that's the state, the police for the state says should have been attached. Okay. And if that's the case and if you had access to it, why wasn't it attached? Uh, did not think it was necessary. We made the allegation that Mr. Goldman was present and supported it with an affidavit. So that is why. All right. If in fact, well, all right, that's a question for another day. Um, what's the real purpose of a stage two hearing? As Justice Burkett pointed out to make, make a foot forth that you have made a substantial showing of a constitutional violation and not just presented to the court, something that was not frivolous and not patently without merit, or, uh, you did not merely set forth the gist of a constitutional violation. Unfortunately here, we did not have a lot to add. As I stated, I don't are, uh, gathering the proof in this type of situation without the subpoena power to bring in people is a bit, uh, bit difficult. So, uh, you do have to show a little more in many cases. In this case, we showed what we could. All right. Well, one of the things that you wanted to show is that Mr. Goldman was at the, uh, at the station and maybe a time that he got there, wouldn't that have gone a long way to establish one of the issues that was rather illusory the first time around? Having some of that would have, uh, been helpful. Um, but only Mr. Goldman and Mr., uh, and the police officers know when Mr. Goldman got to the station, he did not see Mr. Jones. All right. But it would have, it was noted there that he came at a certain time. Mr. Goldman may not have given you an affidavit, but the police report notes the time, correct? Yes. The police report. That's what I said. The police report notes the time. So there we have proof to some extent, uh, that he was there. Now, if the court wants to believe the police report, uh, then I understand what you're saying, but, uh, without an evidentiary hearing, we don't have a way to, to prove when they got there. And I have seen police reports that did not exactly reflect reality in my career. Oh, I, I understand that, but is it customary at a stage two hearing to call witnesses or is it more likely that it's everything there is considered as documentary? Uh, I believe it's not customary at all to call witnesses. So I believe it is documentary. Okay. Um, the state complains that they're not able to present or, or kind of, yeah, complaints. We'll use that word for now and we'll discuss that with Mr. London, but that we, you know, they can't, they can't do certain things. They can't produce certain documents. What's your position on that? I have no, with what they produced, I do not, uh, I do not, uh, object to them producing certain documents and I, I, I've seen it before. Okay. Judge Rossetti wrote a rather extensive disposition on this particular, um, uh, second stage. And, um, are you, uh, are you saying that she missed issues or that she was simply wrong on some of the issues? I'm saying that what I'm saying is that what I've spent my time in on here today about the defendant invoking his right to counsel, uh, was brushed over in that the only, it, it, it was not directly addressed. I can't say missed because I think what the, what can be inferred is yes, it was addressed. The allegations were called conglutinary and uncorroborated, but the issue was mostly addressed in that order with regard to Goldman showing up. And that's where I go back to this court's prior opinion that said, yes, due process is violated. If a defendant is refused access to an attorney who's willing to help him, but that's a separate issue. The mere utterance invokes the rights of the fifth amendment to count the right to counsel. So, um, I think they are two separate issues and the Goldman issue has become, uh, such a focus, but I don't want to forget the fact that, uh, Mr. Jones requested counsel and it was ignored. Okay. You seem to have, um, uh, a conflict or a problem with the fact that you believe that judge Rossetti, um, made some evidentiary decisions in this case at this second stage. Uh, what in particular were those decisions? I think that goes to the, where she, uh, seemed to say that the police officers police report of when they got there was, uh, because the police report reflects, well, Mr. Goldman got here at such and such a time after Jones talked, it wouldn't have mattered. And I think that's a credibility, uh, argument between Mr. Jones, Mr. Goldman and the police. All right. Um, we know, um, from cases in the past, and I'm sure you've seen them in your, your career that police officers can not, they can not tell the truth when they are questioning witnesses. Uh, they can say that somebody said, you're the shooter. When in fact that was never said things of that nature, but what's the difference then maybe as we have here, the difference between a misrepresentation and a lie and what do we have here? The, the, I think what we have here is this is police officers can certainly say, I just talked to your buddy in there and he told me you were the shooter. What's the deal? All part of good and understood interrogation. But when you, you certainly can't say, uh, well, sir, um, if you just confess to us, we're going to let you go home to your benefit. And so what we have here is real close. Mr. Jones and miss, uh, Baines had a relationship. They cared about each other and she was the mother of his child, his son and promising him that she can go, especially when they're together. And who knows how often he saw her and that might have struck him with that's going too far, that specific benefit. Uh, and I would say overboard overbears as well and, uh, causes it to be involuntary. Mr. Jones is not new to the justice system, is he? Uh, no. Okay. And he's talked with police before, I assume. Uh, I would, I would assume so too. Yes. Okay. How, I mean, how is it that he would believe that representation when miss Baines has already talked about her part in the activity? Uh, the, they're regarding, uh, I think the intricacies of accountability, felony murder, those types of things. Um, I don't have a handle on, uh, and have to review constantly and still don't have a great handle on it. I'm aside from the three justices I'm talking to and perhaps the counselor for the state, it's really complicated stuff. What Maurice Jones did know is that she was not present. He, as his position, even in the written statement was this guy came out of the blue. Neo wasn't supposed to be there. There wasn't supposed to be any gun involved when he got out of the van with the gun. And I saw it for the first time, we tried to stop him from doing it and then he did it. And all she did was stay away from the scene and drive a car. So I don't think Maurice Jones was thinking well under common design, et cetera, et cetera, et cetera. And they could maybe rope us in, in for a penny, in for a pound responsible for anything that happened. I don't think he was thinking that I was thinking, well, she wasn't even there. So they can give her a bond and she can go home and take care of our child. Um, and that that's why I would believe it. Um, I think the fact also that he'd talked to the police before, had some experience cuts in our favor a bit because it shows that he would know enough as, as rule, you know, interrogation or suspect defendant one-on-one is you don't talk unless you're promised a specific benefit perhaps. So the, the, the representation was she could go home on bond, not that she would be released from obligations or any liability in this particular offense. I think maybe, I guess, I guess to be specific, I thought it was released is the record reflects. So I think it would, I guess I was adding that. Um, I don't know what he would have thought, but I do believe it's reasonable for him to have thought is, well, I'm the, I'm the bad guy here. They're worse. Nino's the bad guy. I'm one of the bad guys, but she's only minimally involved. So yes, I believe she could be released. All right. You, you, uh, seem, you, you've emphasized a was questioned the, they took his shoes and his shirt. I believe, um, he was tired. Uh, and then 24 hours later, magically a confession appears. Do you have any authority that would indicate that a timeframe of this nature and the circumstances that you're talking about would be some indication that, uh, the defendant was coerced or that his confession was not knowing? Uh, I believe I don't have, I can't point you to a specific case is my understanding. The case law is it's the totality of the circumstances. And I think things like the fact that his shirt will move his shoes are removed. Yes, you can do that. Um, but it does take a step toward breaking down someone's will. Um, can you question someone for 24 hours? I've more than that, 48 hours, et cetera. That alone isn't enough. Um, but when we have here, well, we, we put him in a room and he talks for two or we've talked to him for two hours where he denied any involvement whatsoever. And then we don't see any reason. And then all we see is that he was then, uh, left alone. Um, for reason, why wasn't he taken to a holding cell right away? And then the next day with his co-defendant girl, the girlfriend, mother of his child that he's shown, uh, emotion for, uh, is still around. Um, and then he gets to see her afterwards. I think the totality of those circumstances are why we're suggesting that his will was overborne, but I cannot know. I can't say specifically, uh, if you take shoes and shirt, you're, I can't give you a case that says if you take the shoes and the shirt, you're it's involuntary. If you do it for over 24 hours, it's involuntary. I think you have to look at each case specifically and all the do either justice Burkett or justice Jurgensen have any questions based upon mine? No, I do not. Justice Burkett. Oh, thank you. I thank you, Mr. Johnson. Um, thank you, Mr. London. If you are ready to proceed, you may do so. I am good morning. Your honors council may please the court. Okay. Your honors, the post-conviction hearing act requires defendant to attach affidavits or other documentations, or just support his claims or explain why he's not done. So the people are well aware that the case law says that in a typical case, a pro se defendant might be excused from this requirement, especially if the only source of an attorney. Um, parenthetically, I'm sure this court is aware as are the people that while maybe not the standard, it is not uncommon that defense attorneys are often willing to allege their own ineffectiveness in order to assist their clients. Regardless, this matter is not the typical case. In this case, defendant has been represented by counsel, uh, same counsel who's appearing today during the, or at least the same office, uh, during the entire post-conviction process. Arguably defendant through counsel should have been required to present the affidavit of trial counsel, or at least stayed on the record that an unsuccessful attempt had been made to do so. Um, that is even more true and the people cited the case of people versus Brown, uh, which the citation is in our brief for the proposition that the four affidavits that were attached in this record from the family members could have at least supported defendant's claim that Mr. Goldman was retained to meet with defendant's family and not, for example, uh, by co-defendant Jessica Baines' family, which might be implied by the fact that when Goldman did appear in the scene, according to the police report, Goldman asked to see, uh, Baines first, not defendant. Regardless, uh, defendant chose not to do so, uh, and chose not to explain why he did or did not, or could not do so. Um, the people acknowledge, uh, that defendant has now stated, uh, I'm sorry, counsel has now stated on the record that indeed they made an attempt to, uh, contact Mr. Goldman and that Mr. Goldman may not have been willing. Um, that could and should have been stated on the record, whether in defendant's affidavit or sometime during the second stage hearing that would have cleared up at least some of those questions. Uh, and again, the representation made now, while the people certainly have no reason to not believe that that's accurate, it's not evidence in this record. Uh, the people also, uh, disagree respectfully with, uh, both counsel and with the court's footnote. Um, in the first case that the police is similar to defense counsel, uh, would have been unwilling or likely would have been unwilling to present an affidavit, uh, or explain again that they had attempted to contact the police and were not able to do so. Uh, the people, I don't know that we complained, um, but I do think it was sort of a tongue in cheek, uh, when we asked this court, uh, to, to, uh, hold that the people would be allowed to attach, uh, affidavits from parties. Uh, and that was in response to, uh, the statement that defense counsel had made saying that, um, if anything, the fact that Goldman's affidavit was not presented should be held against the people. So I don't think we complained that we're not able to do that. Uh, but we did suggest that in addition to attaching the police report, uh, the people, I think would have been more than willing to attempt to obtain, uh, an affidavit from Goldman and, or the police officers. And I do believe, and again, this is, this is, uh, certainly not something I'm asserting would have been definite, but the people believe that it is quite likely that the police would at least have been willing to give an affidavit, which said that they would testify consistently with their report, uh, which as defendant acknowledged stated that Goldman not only showed up after the defendant had given his statement, but that Goldman asked first to convene the co-defendant and then asked to speak with the defendant and defendant for whatever reason, um, suggested that he did not wish to speak to Mr. Goldman, which would at least implicitly refute, uh, the supposed repeated, uh, uh, attempts by defendant to request counsel. Um, and as Justice Burkett noted, and I believe you referred to as well, Justice Hutchinson, um, the, the, the first stage standard is a low standard. Uh, it's a gist standard, uh, but we would add, as we did in our brief, that that is also at least partially in place because of the concept that a defendant is typically pro se and wouldn't have the knowledge or the ability to know what needs to be included. In this particular case, that's simply not the case. Uh, defendant was represented by counsel from first stage. And more importantly, uh, even if, uh, that same standard applies, and even if this court, uh, had analyzed it in, in light of the fact that a defendant was represented by counsel at first stage, that same does not hold true through second stage. Simply speaking, uh, we assert that Judge Rossetti, uh, did correctly find that the claims that were now rebutted by the police reports do not rise to a level of a substantial showing of a constitutional violation, uh, under the much more difficult second stage standard, such as to require a third stage evidence or hearing. It can't be a good policy to require a third stage hearing anytime and every time a defendant, especially one from first stage onward, makes a conclusory claim unsupported by sufficient affidavits and or explanation why those affidavits are not included in the record. Um, as Justice Burkett noted, the evidence is not limited, uh, to defendant's statement, which again, we cited in our brief, as did the people in their motion to dismiss, and as was found by Judge Rossetti, uh, that most of those claims, if not all, are waived by the fact that defendant fled guilty. Um, it, it just occurred to me, and I will acknowledge I did not argue this in my brief, but was there an attempt to obtain Jessica Baines' statement? Um, once she pled guilty, uh, and, and once she was sentenced, um, if indeed this was his girlfriend who he cared about, and if there was reciprocal, uh, feelings, once there was no harm, Baines could have given potentially a statement related to who hired Goldman and, and, and what time she spoke to Goldman, and that could have confirmed or refuted the police report. Um, also related to, uh, her culpability, a defendant, as, as was noted, uh, has experience with the police system, and to say that she remained in the car and she had nothing to do with this, that's inaccurate. She did remain in the car. She did not participate in the robbery herself, but she acknowledged that she not only, uh, gave defendant the information after he had said, hey, I need a way to come up with quick money, uh, about the system that the job that she was at, uh, utilized to bring money to the bank. She also participated in the planning along with defendant. So yes, it is unrealistic, uh, to believe that defendant would have believed that she would not only be released, but would never be charged. And I do believe that they don't even assert that he didn't also believe that she would not be charged. Um, I cannot disagree with counsel that the, uh, liability, uh, for accountability for others is somewhat complex. However, I do believe that defendant is simply wrong in suggesting that people versus Johnson and not people versus Fernandez is controlling, uh, in a, I will not get into, uh, an analysis today about Fernandez versus Johnson, unless the court questions it. Um, but I do, uh, believe that I had this discussed that pretty extensively in the people's pleading. Uh, that is the, uh, all that I need to say for my prepared remarks. And of course, I am more than willing to answer any questions this court might have. Uh, Justice Jorgensen, do you have any questions? As my question really goes to, um, defendant's first allegation that he requested an attorney repeatedly during the 24 or 23 hour interrogation, and that is supported by his affidavit, which you believe to be conclusory. So my question to you is what more would he have had to put in his again? And I'm not disputing. Uh, I say it's conclusory because justice, uh, justice judge Rosetti found it was conclusory. Uh, so, so I'm asking this court to, to, uh, follow her finding. What else could you put in? Um, the rest of the statement, uh, if the rest of the statement gave more explanation of, of why he, his will was allegedly overboard. Um, the fact that he was questioned for two hours, denied it, uh, was offered food, was offered drink, uh, was allowed to go to the bathroom, asked for, and was allowed to speak to, uh, his girlfriend, his co-defendant and that he then 24 hours later, uh, there's nothing that suggests he was physically coerced. There's nothing that suggests, uh, here's the point. Do you have to be physically, um, coerced in order to ask for an attorney? No, of course not. And we're not, I asked for an attorney. That is not a conclusion. That's his statement. I uttered those words, presumably in the presence of the police officers. Isn't that enough? I'm not sure under the facts. Go ahead. I'm sorry. Yeah. I'm not sure under the facts of this case it's enough because when you look at the totality of the circumstances, that in itself kind of undercuts why he would have been later, you know, can confess and had his will overboard. Um, and given that we do have the fact that Goldman was there, the fact that we have a police report that says, okay, an attorney asked to see him. And he said, I don't want to see that attorney. But if we accept the state's representations here, he had already made a lengthy statement by the time he's made aware that Goldman's there. His allegation is I receivably made a request for an attorney. Now we have to take that at face value and Goldman, the police report just says Goldman doesn't arrive until after he's made all of these statements. So what would be the point of seeing an attorney at that point? The point of seeing an attorney would be arguably. And again, obviously I, I, I can't read defendant's mind. I can't read Goldman's mind. Uh, I don't know when the record doesn't disclose who did retain Goldman, but, but the point would be that even if you've made your statement for whatever reason, that, that if you see an attorney at that point in time, you can always have the argue that you were coerced. Let's say now that you want to move to withdraw. Would that be sufficient? But that's all way, way outside the record. There is just nothing in the record to support your theory there. My, what I keep coming back to is if he puts in an affidavit, I repeatedly asked for an attorney and the questioning continued. Is that enough? Yeah. Is that enough to an evidentiary hearing on that issue? Uh, again, for the reasons that we've argued, even though it is speculative, but yeah, if there is, if this court determines that that in itself is sufficient, uh, as we argued, then any third state sharing should be remanded for a limited purpose. Okay. And, um, if Goldman, I mean, one of the theories about not having, uh, to get an affidavit from your trial counsel, um, is that they, you know, they don't like to put themselves in a trick box or admit in writing and an affidavit that they screwed up. Um, do we know that, um, the time let me back up and say, you know, apparent here on the record is that when Goldman arrived is pretty critical information. Um, wouldn't he be putting himself potentially in a trick box if he had been contacted early in the day and doesn't get there until much later in the day? Um, something that a private attorney would not want to put into writing and swear to under oath. I don't, I mean, again, obviously it's speculative. I don't think so because, you know, the fact that you're retained by somebody, whether it was defendant or co-defendant, um, and I don't think that that requires you to, you know, dash out of the, you know, out your door. What the case law talks about is a reluctance by counsel to want to admit any shortcomings in their performance. I heard your argument saying that in your experience, uh, defense attorneys are more than willing to fall on the sword. And while that may be, it may very well be the other way, you know, to admit in writing that they made mistakes. No dispute. We are not suggesting that all defense attorneys by any means would be willing. So my question is, doesn't that somewhat explain why perhaps Mr. Goldman did not relish the thought of, oh yeah, I'll, I'll give you an affidavit explaining what I did or didn't do that day. Oh, definitely. And we do not disagree with you. And if, if defendant had stated at the stage two hearing or in his affidavit. Right. I, I heard your argument on that the first time, but my point is don't, can't we make that assumption that many cases have made that trial counsel simply does not want to be involved. Doesn't it cut both ways? Um, oh, certainly. We can certainly make that assumption. I have another question for you that I noticed, I believe it was in the defendant's reply brief that had they attached family member, um, affidavits, those are inherently biased. I mean, how much weight does, uh, can you put in an affidavit of defendant's family that says, oh yeah, we did all these great things. And how much weight would that really have? It would have more weight than not saying it. I mean, obviously, I mean, and again, this court might say at least the same way we're suggesting that, uh, we don't know what either trial counsel, uh, or, uh, Mr. Goldman might've said this court might very well. I mean, I, I'm not suggesting that I have, I, I really, I don't ask, not asking you to reiterate the same things you've said over and over. Right. I have no additional questions, Justice Hutchinson. Thank you. Thank you, Justice Jorgensen. Justice Burkett, you may proceed. Justice Hutchinson, um, Mr. London, uh, the purpose of 402 admonishments is to ensure that the defendant's plea is voluntary, that it's intelligent, that he understands, uh, the rights that he's waiving, correct? Correct. And here, there is no allegation anywhere in either the petition or the defendant's affidavit that his plea was involuntary, correct? Correct. And when the defendant pleads guilty, he waives the right to file a motion to suppress, correct? Correct. And Judge Rossetti found that. And Judge Rossetti found that there was a waiver. She cited Peoples and other cases, correct? Exactly. And the decision as to whether or not to file a motion to suppress is, and I will quote the Supreme Court, is a matter of trial strategy, which is entitled to great deference, correct? Yes. And here, the only thing that is in the petition is the defendant's own self-serving statements, correct? Correct. Nothing else? No. And the defendant, at this stage, must show that there's a reasonable probability that both his motion to suppress would have been granted and that he, the outcome would have been different. In other words, he would have gone to trial, correct? Correct. In Jones 1, we made an observation, quote, furthermore, it does not appear that without the defendant's statement, the state could have produced substantial evidence of the defendant's guilt. I was not on the panel, but in the pleadings, in what's in the affidavits submitted and in the common law record, there was an abundance of other evidence, including Miller's testimony, who agreed to testify against the defendant in exchange for probation and 180 days in jail, correct? Correct. And with respect to disparity, counsel didn't comment on this, but the defendant did have a prior arrest, and he was charged with attempt first-degree murder, which was pled down for five years on a felony possession of an unlawful possession of a firearm, correct? Correct. Why did you argue waiver in your brief? I think you just alluded to it, but you didn't make it as a main point of your brief. I believe that I covered it sufficiently by arguing that we were incorporating the argument of Judge Rossetti. During the plea proceeding, the defendant wanted to say something to the court after the trial court admonished the defendant and he understood and assured the court he had gone over the discovery, discussed the offer, and then the judge said, do you have anything to say? And the defendant said that he was sorry for what he had done. He was sorry for what he put the victim's family through and what he put his own family through. In the event that the defendant would be successful in showing ineffective assistance of his will, because it was a product of a plea that he would not have entered, or is that a judicial admission? I think that's an admission on the record. I mean, as you've suggested, I don't think there's any evidence to suggest that the defendant has made a substantial showing that his statement was involuntary, certainly not for second-stage purposes, but I agree that that statement was on the record regardless. I mean, I don't think you erase it because you go back and I don't even know that we should have a third-stage hearing on it, much less that it would be erased even if we suppress his statement. But as you've suggested, there's more than his statement. We have Jessica, not only did Miller agree to testify, we have Jessica Bain's statement that laid out exactly what happened. We have the videos, we have the testimony of the victim. We had people that saw Miller and defendant get into the car and drive away. So we did have a lot more than just his statement that, again, for lack of a better term, speculation, but there was a lot more that the people would have had that they could have gone to trial. And those were things that trial counsel would have had to weigh in deciding whether or not to file a motion to suppress. Unquestionably, even assuming defendant did indeed say, I want to file a motion to suppress, that is something that counsel would have had a way, probably should have discussed with defendant, may or may not have. But yes, that is definitely something that counsel had a way and that would have been a matter of trial strategy. And the defendant, according to his petition, he was aware of his rights. I mean, in his written statement, there's an acknowledgement that he had been given his rights. But nevertheless, at the sentencing hearing or the plea proceeding, Judge Rossetti asked him if he had any other questions or any other concerns and he said no, correct? He said no. As you noted earlier in questioning counsel, this was not something that was just sprung on him at the last minute. The offer was made. And again, as we say, cited more specifically in our brief, this was not simply something that he agreed to a 25-year plea that it could have been a maximum 30. It could have been 45 to life. So yes, he was aware of all of that. He made an educated decision and now for whatever reason, he's trying to go back and complain about it. That's all I have. Thank you, Mr. Warren. Thank you. Thank you, Justice Burkett. Mr. London, in your experience and your years doing this type of work, have you ever seen a second stage hearing where witnesses are actually called? Your Honor, again, off the record, I do believe there have been cases. I cannot cite you to one. I can also state that, again, anecdotally, I know of at least one case and I believe there have been additional cases where at the appellate level, this court has allowed the people to present affidavits from defense attorneys. I am not suggesting that that is the law. I'm not suggesting that is done frequently, but yes, it has been done both that witnesses were called and it has been done where, as I said, that this court has allowed the people to present affidavit. As I said, while it was tongue-in-cheek, it was at the invitation of the defendant that this people said we would have no objection to this court suggesting that at second stage, at the very least, the people be allowed to present affidavit. Again, I will accept counsel's representation that he had talked to Mr. Goldman and Mr. Goldman was reluctant to do so. I suggest that if he had put that on the record, that would be at least one issue we wouldn't have to argue today, but I believe that we could have presented the affidavit of the police officers. This case was, this second stage was heard on documents, correct? Correct. No question. And how is it possible that just on cold black and white documents can an evidentiary or credibility ruling be made? Again, I don't think we could allow on just on documents a credibility determination to be made. Then why would the police issue, why would you want to offer the police affidavit saying they would testify consistently with their report? Wouldn't that just invite a credibility decision? Well, it would be potentially, but it would also be something, documentation or report that rebuts defendant's self-serving conclusory claim. So is that a credibility determination? I'm not sure, but I also suggest that the line is kind of blurred, but yes, to some extent, credibility determinations can be made to a self-serving conclusory statement if it's rebutted by the record. And at that point, it would be rebutted by the record. All right. We're arguing or we're talking here about the fact that Attorney Goldman arrived at the police station, but it was too late to assist the defendant in his statement. How do we know, number one, when the statement was specifically made and number two, that Goldman arrived late? The police report. The police report states exactly what time the interview or the interrogation, whatever you want to call it, was re-initiated and at what time the written statement was made. And then separately says that Goldman arrived after that and that he requested to speak to Baines first. So it is that police report, which, and again, we weren't accusing defendant or counsel of any impropriety as much as saying it's ironic and interesting that the police reports of both Baines' statement and Miller's statement were included and indeed the testimony from Baines' sentencing hearing was included and that the police report from defendant's own case was not. All right. But by offering that particular information, weren't you inviting an evidentiary ruling in this case at second stage? Again, I believe that to some extent, if we want to specifically, yes, to some extent we were, but we're able to do that if the record refutes the affidavit. And in this case, police report, was it in the record? It was placed in the record under the concept of, you know, the completion doctrine and there was no objection. Was it in the trial court? Was it argued in the trial court in this fashion that the police report was centered to judge Rossetti in the trial court? No, of course not. And the reason being is because defendant pled guilty and there was no reason to include that police report. Where in the record then do we know other than this police report that Mr. Goldman arrived later and asked to see Ms. Baines first? We don't know other than the police report, but again, I would assert that that police report was properly placed in the record at the second stage hearing and again, was done so without objection. All right. Now, in your brief early on, probably within the first couple of paragraphs, you make an alternate request for a limited remand on one issue and that would be whether there was a request for counsel. Correct. Is that, what are we going to call that? A concession? A last option? A compromise? What should we call that? An alternative argument. It is certainly not a concession that is necessary, but it is acknowledging that if the court were to find that that simple assertion was not rebutted by the police report or by the totality of circumstances and if it was not waived by defendant's plea, that alternatively it should be remanded for a limited purpose. So no, it is certainly not a concession. We do not believe that a third stage hearing is necessary or preferable in this case, but if it is and this court determined, it should be for a limited purpose, which of course this court can do. All right. You indicated to Justice Burkett that while you may not have argued independently concerning waiver, by representing you were adapting Judge Rossetti's which is extensive and quite thorough, that you were arguing that issue. If waiver is the issue here and if waiver is, you know, if we take the statements in Peebles and Stice, if waiver is waiver, why wouldn't you emphasize that? Um, I wish I had a brilliant answer to that. Obviously, based on both your and Justice Burkett's questions, I probably should have done more than just say, just Judge Rossetti said it, I don't need to repeat it. You know, generally, it's my position to go beyond what the decisions have already been made. But of course, if for whatever reason, this court were to find that I did not... Go ahead. I don't know who that was. Sorry. If for whatever reason, this court were to find that I did not raise it sufficiently, obviously, the case law is well documented that this court can find waiver or not find waiver on its own. And I would request that if this court finds that I didn't do it sufficiently, that this court find that it has been waived for those reasons that Justice Rossetti has stated on the record. All right. Thank you very much, Mr. London. Thank you. Justice Jorgensen or Justice Burkett, do you have any questions based upon mine? Justice Jorgensen? I do have one comment. You did not, and I appreciate your candor, acknowledging that you did not argue waiver at all, but can we use a waiver argument to affirm on any basis? Yes, definitely. All right. I have nothing else, Justice Jorgensen. Thank you. Justice Burkett? Just to follow up on that. Okay. Even if we were to address the merits, the defendant's burden is to make his statement going that he would have been successful in that motion to suppress his statements, correct? Correct. And your position is that he just has not made that showing because all he has is his own self-serving statements, correct? Correct. And even though he could have met the gist standard, he certainly does not meet the second stage standard. Thank you. That's all I have. Thank you, Mr. London. Thank you. All right. Thank you, counsel. Mr. Johnson, do you have any reply that you have the opportunity to make at this time? Thank you, Justice. Very briefly, I do want to make something clear. I did not represent that I spoke personally to Goldman and he refused. I just wanted to make it clear that counsel stated he doesn't doubt that I, Doug Johnson, talked to Goldman and he refused. That is not the case. But as I said earlier, attempts were made to obtain an affidavit from Goldman by our office. Secondly, just in regard to this about securing affidavits, I think counsel suggested that we could get at least an affidavit from police officers saying they would testify consistently with their police report. I respectfully disagree. That has not been my experience ever obtaining any kind of cooperation. And I'm not casting, I'm not saying this in a hostile way, but I have not received cooperation on PC from police officers speaking to us. In regard to Jennifer Baines, I will represent that I personally contacted Ms. Baines, tried to contact her and get her affidavit. That personally I did try repeatedly. She is out now, I believe, of prison and were this to go to an evidentiary hearing, I agree with counsel that that would be relevant information to try to obtain. And lastly, counsel stated there was a lot more evidence. I disagree with that. I agree with this court's initial ruling that there was not a lot more in this court's opinion. They talked about how the statement, your honors, the court talked about how there was not much of any additional evidence. With regard to Ms. Baines, that trial transcript, which I unfortunately don't have before me, I don't believe whatever is represented in there is a guarantee that she would have cooperated fully and implicated Mr. Jones. Not only that, Mr. Jones' defense would not be, I was not there, I had nothing to do with this in a subsequent retrial or subsequent hearing. And lastly, with regard to trial strategy, that's been, I understand in a lot of contexts, trial strategy. Here, I don't understand, strategy usually means you get a benefit. If you do something or don't do something, you get a benefit. Here, I understand there may be strategy with entering a plea and not going to trial, risking a jury tracts or whatever, but I don't understand what possible benefit there is when you have a more meritorious motion to suppress defile. And under these circumstances, I believe the record reflects that there was a meritorious motion to suppress that would have changed the defendant's decision to go to trial if the statement was suppressed. Under these circumstances, I don't see the strategy in not filing a motion to suppress unless there was something in the record that the prosecutor said, if you make me go through a motion to suppress, then I'm going to ask for more time. I don't see here how there is any possible way to infer that a benefit was gained from not filing a motion to suppress. Thank you. Thank you, Mr. Johnson. Justice Jorgensen, do you have any questions? I do not. Thank you. Thank you. Justice Burkett, do you have any questions? Yes, I do, Your Honor. Just a couple. You mentioned that you had tried to reach or spoke to Jennifer Baines and tried to get an affidavit, but you didn't put that in a supplemental affidavit. You didn't add that to the post-conviction petition. And I also, I did not speak to her. I tried to contact her and no, I didn't. You add things at oral arguments. You understand that, right? I'm sorry? You add evidence to oral arguments. This is only to rebut the state's argument, Your Honor. And there's no affidavits from, new affidavits from family members, any family member, that they contacted Mr. Goldman, correct? Don't believe those were necessary, Your Honor, because Mr. Goldman arrived at the station. We know that. Okay. You mentioned trial strategy. You're saying that there was no other evidence besides the defendant's statement? I'm saying there was minimal evidence that would have, because there was minimal evidence available, that if the statement was suppressed, it would have been far more reasonable to go to trial or obtain a much better deal. If the statement was suppressed, that's your, that's your position. And I believe it's more likely than not, the statement would have been suppressed. On what basis? For the reasons I've stated, the fact that there was an attorney at the station that I believe was there in time for Mr. Jones, Ms. Jones, Mr. Jones, who had been arrested the day before and was precluded from speaking with him. I believe that under these circumstances, it may, it can be inferred from the record that Mr. Jones requested an attorney and it was refused. And I believe that under these circumstances, Ms. Daines, it will be shown that Ms. Daines would use this leverage and Mr. Jones spoke to try and assist the mother of his son as promised by the police. That's all I have. Thank you, Mr. Johnson. Thank you. Thank you. Mr. Johnson, when, when we have any sort of a trial, the court looks at physical evidence and the court may look at any testamentary evidence, including a confession. In your experience, if you had to rank these particular types of evidence, what, what would be, what would be the most important? Testimony versus a confession? Yes. A confession. Okay. Because the defendant is somehow admitting or even though he's not admitting everything, he might be admitting some part in an activity or an no one would confess if they didn't do it. Okay. But you don't dispute that there were, there were apparently witnesses who saw them get into Ms. Daines' car and that's how they ultimately found them because that car was identified by those witnesses and they were still all together when this happened, correct? Daines and Jones were together, yes. Yes. Okay. All right. I don't have any other questions and do either of my colleagues have questions upon my limited questioning? Justice Jorgensen? Oh, I do not. Justice Burkett? No, thank you. Thank you. All right. Counsel, thank you for your arguments this morning. We do appreciate your time and your effort. We will take this matter under advisement and we will issue a decision in due course. At this time, Mr. Kaplan, you may terminate the proceedings. Thank you, Your Honors. Thank you.